# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| KEVIN RAY, SR., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, Commissioner of Social Security, <br><br> Defendant. |

Civil Action No. 06-262 (CKK)

## MEMORANDUM OPINION
(June 21, 2010)

Plaintiff Kevin Ray, Sr. brings this action seeking review of the final administrative decision by Defendant Michael J. Astrue, in his official capacity as Commissioner of Social Security (the "Commissioner"),[1] denying Plaintiff's claim for Supplemental Security Income Benefits ("SSIB") pursuant to 42 U.S.C. § 405(g). Pending before the Court are Plaintiff's Motion for Judgment of Reversal and Defendant's Motion for Judgment of Affirmance.[2] After reviewing the parties' briefs, the administrative record, and the relevant case law, the Court shall GRANT Plaintiff's [5] Motion for Judgment of Reversal and shall DENY Defendant's [6] Motion for Judgment of Affirmance. For the reasons that follow, the Commissioner's decision

---

[1] Plaintiff's Complaint named as the Defendant the then-Commissioner of Social Security, Jo Anne B. Barnhart. As Ms. Barnhart was sued in her official capacity, the Court has substituted the current Commissioner of Social Security, Michael J. Astrue, as the Defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] The Court notes that this case was originally filed before another member of this Court. It was ultimately reassigned to the undersigned for resolution in light of the fact that this Court had issued the original decision remanding the case back to the Commissioner for further proceedings. For reasons that are not clear from the record, however, the case was not reassigned until more than a year after briefing on the parties' cross-motions had been completed.

below is reversed-in-part and is remanded for further proceedings consistent with this Memorandum Opinion.

## I. BACKGROUND

*A. Legal Framework and Procedural History*

Plaintiff filed an application for SSIB pursuant to Title XVI of the Social Security Act on February 14, 1996. *See* Administrative Record ("A.R.") at 98-99. To qualify for SSIB, a claimant must demonstrate a disability, which is defined by the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 416(i)(1); *id.* § 1382c(a)(3)(A). In addition, a claimant seeking SSIB must have a severe impairment that makes him unable to perform past relevant work or any other substantial gainful work that exists in the national economy. *See id.* § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). Substantial gainful work activity is work activity that involves doing significant physical or mental activities and is the kind of work that is usually done for pay or profit. *See* 20 C.F.R. § 404.1472.

In making a disability determination, an Administrative Law Judge ("ALJ") is required to use a five-step sequential analysis examining (1) the claimant's recent work activity, (2) the severity and duration of the claimant's impairments, (3) whether the claimant's impairments are medically equivalent to those contained in the Listing of Impairments promulgated by the Social Security Administration, (4) the claimant's residual functional capacity and ability to perform past work, and (5) the claimant's ability to perform jobs reasonably available in the national economy. *Id.* §§ 404.1520(a)(4), 416.920(a)(4); *see also Brown v. Barnhart*, 408 F. Supp. 2d 28,

32 (D.D.C. 2006). At the first step in the analysis, the ALJ must determine whether the claimant is working and whether the work is substantial gainful activity; if so, the claim must be denied. *See Brown*, 408 F. Supp. 2d at 32. At step two, the ALJ must determine whether the claimant's impairments are severe; if they are not, the claim must be denied. *Id.* In step three, the ALJ compares the impairments to a listing of impairments that automatically qualify as a disability under the regulations. If the claimant's impairments match those listed, disability is conclusively presumed. *Id.* If there is no match, the ALJ proceeds to step four and determines whether the claimant has any residual functional capacity to perform his old job. If so, the claim will be denied. *Id.* If not, the ALJ proceeds to step five and determines whether there is any other gainful work in the national economy that the claimant could perform notwithstanding his disability. Although the claimant bears the burden of proof with respect to the first four steps of the analysis, at step five the burden shifts to the Social Security Administration to demonstrate that the claimant is able to perform "other work" based on his residual functional capacity, age, education, and past work experience. *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004). If so, the claim must be denied.

      Plaintiff's application alleged an inability to work beginning on October 14, 1993, due to nerve damage to the right side and low back pain. A.R. at 98-99, 101. The application was denied initially and on reconsideration. *Id.* at 84-85. Plaintiff filed a timely request for a hearing, *id.* at 96-97, and a hearing was subsequently held before an Administrative Law Judge ("ALJ") on October 23, 1997, *see id.* at 41. Following the hearing, the ALJ issued a decision unfavorable to Plaintiff. *Id.* at 12-27. Plaintiff requested review by the Appeal Council, *id.* at 10-11, which ultimately concluded that there was no basis for granting his request for review, *id.*

3

at 7-8. Plaintiff appealed that decision to the United States District Court for the District of Columbia. *See Ray v. Massanari*, Civ. Act. No. 01-437 (CKK). On January 31, 2004, this Court reversed the decision below in part and remanded to the Commissioner for further proceedings consistent with the issued decision. A.R. at 254-64.

On November 29, 2004, the Appeals Council vacated the final decision of the Commissioner and remanded the case to an ALJ for further proceedings. A second hearing was then held on November 21, 2005, in Washington, D.C. *See id.* at 224, 285. At the time of this hearing, Plaintiff was a 43 year-old male resident of the District of Columbia. *Id.* at 289-90. He has a 9th grade high school education and last worked in 1992 driving a truck. *Id.* at 290. Plaintiff was present at the hearing and was represented by counsel; an impartial vocational expert ("VE") was present as well. *Id.* at 287. In a decision dated December 12, 2005, the ALJ again determined that Plaintiff was not disabled within the meaning of the Social Security Act and denied the requested benefits, which decision became the final decision of the Commissioner. *See generally id.* at 224-231.

At <u>step one</u>, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. *Id.* at 226. At <u>step two</u>, the ALJ found that the medical evidence indicated that Plaintiff had "dislocations — all types; and affective disorders," which qualified as "severe." *Id*. The ALJ determined at <u>step three</u> that these impairments did not meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, No. 4 (20 C.F.R. § 404.1520(d)), specifically, Listing 1.00 (Musculoskeletal System), Listing 11.00 (Neurological), and Listing 12.04 (Affective Disorders). *Id*. At <u>step four</u>, the ALJ assessed Plaintiff's RFC and found that he "retained the residual functional capacity to perform

4

light and sedentary level work." *Id*. at 228. The ALJ indicated, however, that his "capacity to perform a full range of work is diminished, because he requires unskilled work, with a sit/stand option; limited general public contact; and limited dominant hand usage." *Id.* Because there was no prior relevant work history in the file and because Plaintiff stated that he could not remember what work he had engaged in, the ALJ also determined at step four that Plaintiff could not return to his past relevant work. *Id.* at 229. The ALJ therefore continued on to <u>step five</u>, at which stage he concluded, based on the VE's testimony, that Plaintiff could perform a significant number of jobs in the national economy at the light level (e.g., inspector, grading and sorter, bench worker) and at the sedentary level (e.g., quality control worker, security, and finish machine tender). *Id.* 230. Accordingly, the ALJ determined that Plaintiff "is not under a 'disability' as defined in the Social Security Act" and was therefore ineligible for SSIB. *Id.* at 230.

B.    *Evidence Contained in the Administrative Record*

The record at the time of the hearing consisted of both medical evidence submitted in connection with Plaintiff's first administrative hearing in 1998 and additional medical evidence for purposes of the hearing on remand. Given the length of time between hearings, both the ALJ's decision and the parties' present briefing focus principally on the latter evidence — that is, medical records that were newly-obtained after this Court's initial decision remanding this case for further proceedings.[3] The Court shall therefore do the same.

---

[3] At the first administrative hearing, the evidence consisted of medical records dated from 1994 to 1996. *See* A.R. at 15-23. There are no other medical records in Plaintiff's file until 2005, when he was referred to Dr. Rida Azer and Dr. Sambhu Banik, as is discussed below. The ALJ incorporated the pre-2005 medical evidence of record into his decision by reference, but did not specifically discuss the evidence in his decision. *See id.* at 226 ("The medical evidence of record from the previous hearing is incorporated into this decision by reference."). Nor has Plaintiff raised any issues related to this material, instead focusing on the ALJ's consideration (or

### 1. Physical Health Records

On August 3, 2005, Dr. Rida Azer performed an orthopedic evaluation of Plaintiff based upon his complaint of nerve damage to his right side and low back pain. *See id.* at 273-84. Dr. Azer noted that Plaintiff was alert and oriented; appeared to be in no acute distress; and was able to concentrate and understand throughout the exam, although he did have some trouble understanding the medical history form he was required to complete. *Id.* at 275. Plaintiff was reported to have 4/5 muscle strength in his right upper and lower extremity with decreased hand grasp on the right. *Id.* Plaintiff was also reported to have evidence of hypoesthesia[4] over his right upper and lower extremity and to have point tenderness over his lumbar spine region with negative straight leg raise test bilaterally. *Id.* Dr. Azer indicated that there was no other evidence of a decreased range of motion, although it was noted that Plaintiff brought a cane with him to the visit. *Id.* While Plaintiff was able to ambulate without use of the case, when he did so, his right lower extremity drags as he ambulated; with the cane, he was able to propel and show a more improved gait and station. *Id.* Dr. Azer noted that Plaintiff "does need to continue using this assistive device to help with his ambulation." *Id.* at 276. Plaintiff was also reported to "have limitation [in the] use of his right hand, arm and fingers." *Id.* Dr. Azer concluded that "[Plaintiff] should not perform any duties that include lifting, carrying or handling objects with the right upper extremity, prolonged standing or walking." *Id.* In addition, while Plaintiff "is able to sit," Dr. Azer indicated that "he should not sit for prolonged periods of time."

---

lack thereof) of the newly-submitted medical records from 2005. *See generally* Pl.'s Mot.

[4] Hypoesthesia is defined as decreased sensitivity, particulary to touch. Def.'s Mot. at 6, n. 2 (quoting DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 806 (28th ed. 1994)).

Dr. Azer also completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) based upon the physical exam of Plaintiff. *Id.* at 278-84. As set forth therein, Dr. Azer indicated that Plaintiff could not lift or carry more than 10 pounds occasionally with his right upper extremity; could stand and work for 2 hours in an 8-hour workday, but indicated that a medically required hand-held assistive device was necessary for ambulation; and could sit for about 6 hours in an 8-hour workday. *Id.* at 278-79. With respect to Plaintiff' postural limitations, Dr. Azer reported that Plaintiff could occasionally engage in balancing, but could never climb ramps, stairs, ladders, ropes or scaffolding and could never kneel, crouch, crawl or stoop. *Id.* at 279. In addition, Dr. Azer reported that while Plaintiff had no manipulative limitations for his left upper extremity, with respect to his right upper extremity, he was limited to only occasionally reaching, handling and fingering and only frequently feeling. *Id.* at 280. Plaintiff, however, was reported to have no visual, communicative, or environmental limitations. *Id.* at 280-81.

2. Mental Health Records

On July 30, 2005, Dr. Sambhu Banik, a licensed psychologist, performed a psychological evaluation of Plaintiff at the request of the Disability Determination Division. *See* A.R. at 72. Dr. Banik reported that Plaintiff "looked tired, happy, responsive and cooperative." *Id.* "His articulation was clear and normal," and "[h]is speech was coherent and relevant but slow." *Id.* Dr. Banik further observed that Plaintiff's "responses were appropriate to the questions asked;" he "was oriented to time, person and place;" and his "memory for current, recent and past events was slow [] but intact." *Id.* Plaintiff reported that he often felt very depressed, stayed by himself, and did not feel like talking with others. *Id.* He felt sorry that he could not do many things

7

because of his pain and leg condition. *Id.* He further reported that he "talk[ed] to himself, cried a lot, thought of suicide and jumping off the bridge." *Id.* at 267.

Plaintiff reported a troubled childhood and a history of legal problems, including multiple incarcerations. *Id.* He stated that he left school in the 8th grade and never obtained a GED. *Id.* Starting at age 15, he worked for three years doing demolishing work until he was then hired to work as a truck driver at various warehouses and retail locations. *Id.* Plaintiff indicated that he lived with his mother and brother. *Id.* at 269. Dr. Banik reported that Plaintiff was "partially independent in his self help and ADL skills." *Id.* "He could sit, stand, walk with the help of a cane and can pick, grasp, hold." *Id.* "He could not run, bend, jump, carry things in his hands." *Id.* In addition, Plaintiff needed assistance coming out of the shower or bath and could not clean his room or wash his clothes. *Id.* Plaintiff, however, could cook and fix food, read, write, calculate, shop for his own needs, use the phone, and use the metro systems, although at times he needed an escort. *Id.*

Dr. Banik reported that on the Weschler Adult Intelligence Scale-III (WAIS-3), Plaintiff received a Verbal IQ of 75, a Performance IQ of 70, and a Full Scale IQ of 70, all of which fell within the borderline range of intelligence. *Id.* at 268-69. Dr. Banik also reported that Plaintiff had "slight problems in memory processing" and was "suffering from depression along with his physical health problems." *Id.* at 268. Dr. Banik concluded that, "[i]n his present condition, Plaintiff "will not be able to engage and hold any productive work with reliability." *Id.* The report, however, recommended that Plaintiff "should [] join some day program for vocational training because he has retained the abilities to understand and remember short simple instructions, [and] carry out simple instructions;" as such, Dr. Banik concluded that Plaintiff

"may be rehabilitated with proper training to work simple, routine behind the desk jobs such as filing, etc." *Id.*

### 3. Transcript of the Administrative Hearing

As indicated above, Plaintiff's hearing on remand was held before an ALJ on November 21, 2005. *Id.* at 285. Plaintiff was present at the hearing and was represented by counsel. *Id.* at 287. Plaintiff testified at the hearing as well as an impartial Vocational Expert. *Id.* Plaintiff stated that he last worked in 1992. *Id.* at 290. He stated that his mother and brother did his cooking, cleaning, and grocery shopping for him. *Id.* at 291. He would play cards, watch tv, and take walks with his mother on a regular basis. *Id.* at 292. Plaintiff acknowledged a history of substance abuse, but indicated that he had abstained from both alcohol and illegal substance for the last three years. *Id.*

With respect to his physical impairments, Plaintiff testified that he walks with a cane and has done so since approximately 1994 or 1995. *Id.* at 292-93. He stated that he had difficulties lifting his right leg and that it hurt to plant his right foot on the ground. *Id.* at 293. According to Plaintiff, he could "do a little walking but [] get[s] tired fast;" he was unable to specify, however, precisely how long he could stand or walk without becoming too tired. *Id.* at 295. Plaintiff also stated that he had difficulties with his right hand and would sometimes drop things without even realizing it. *Id.* In addition, he stated that his had constant back pain, which he treated with over-the-counter Tylenol. *Id.* He indicated that he was not at that time on any prescription medication. *Id.* at 296.

The VE was present throughout the Plaintiff's testimony and stated that he had sufficient information to testify in the case. *Id.* at 297. The ALJ asked the VE the following two

hypotheticals. First, he asked the VE to "[a]ssume a hypothetical person who has the same age, education, and work experience as the Claimant and who has the capacity to do sedentary work, unskilled, [with] a sit/stand option, [] limited dominant hand usage" and "limited general public contact." *Id.* The ALJ then asked, "Can you identify any jobs that such a hypothetical person can perform on a sustained basis in which jobs exist in significant numbers in the national economy?" *Id.* The VE responded affirmatively, providing the following non-exhaustive examples of jobs from the sedentary, unskilled occupational base: quality control worker, security worker (unarmed), and finish machine tender. *Id.* at 298. Second, the ALJ asked the VE to "[a]ssume [] a hypothetical person who has the same age, education, and work experience as the Claimant and who has the capacity to do light work, unskilled, with a sit/stand option, limited dominant hand usage, and limited general public contact." *Id.* The VE again responded affirmatively, providing the following nonexhaustive examples of jobs from the light, unskilled occupational base: inspector, grading and sorter work, and bench worker. *Id.* at 298-99. The VE stated that his testimony was consistent with the *Dictionary of Occupational Titles*, except as to the sit/stand option, for which the VE relied on his own experience as a vocational expert. *Id.* at 299.

Plaintiff's attorney then asked the VE a series of questions. In response, the VE testified that if the person identified in the two hypotheticals outlined above was further limited in that the individual could work only at approximately 80 percent productivity — either because he was absent from work approximately 20 percent of the time or because he could only produce approximately 80 percent as much as was produced by other workers performing the same tasks — then all work would be precluded. *Id.* at 300-01. The VE also clarified that the sit/stand

option assumed that an individual could sit and/or stand at will throughout the day and that the individual could stand and sit for a minimum of five minutes at a time; the VE stated that if an individual could not do that, and was essentially "bobbing up and down so much that [it] would interfere with both production and ability to perform task," then the individual may have difficulty with the work identified above. *Id.* at 301. In addition, the VE clarified that when he assumed a limited dominant hand usage limitation, he was assuming an individual that was limited in his ability to do fine manipulations of his fingers or opposing thumb (i.e., fingering) (as opposed to limitations in the "areas of articulation of the wrist, the elbows, and the shoulder"). *Id.* at 303. In addition, he clarified that the limited dominant hand usage assumed that the individual was limited to "[o]ccasional use" only (i.e., could not use the dominant hand for fine manipulation on a frequent or constant basis); if the VE were to assume less than occasional use of the dominant hand, he stated that this assumption would preclude all jobs at the sedentary level, but not at the light level. *Id.* at 302-03. The VE also testified that if the individual in the second hypothetical presented above was further limited in that he was unable to reach and handle or finger any objects, than the jobs identified at the light category of exertion would also be precluded. *Id.* at 304-06. Finally, the VE testified that the use of a hand-held assistive device to stand could "become[] a major factor and could preclude all jobs," at either the sedentary or light level, depending upon how often the individual would need to stand as part of the sit/stand option. *Id.* at 306.

    C.    *Proceedings in District Court*

Plaintiff filed a timely appeal of the Commissioner's final decision. After service of the Complaint was made and Defendant filed an answer, the Commissioner filed the Administrative

Record.  *See* Docket No. [4].  Plaintiff subsequently filed his Motion for Judgment of Reversal.  *See* Docket No. [5].  The Commissioner filed a Cross-Motion for Judgment of Affirmance, *see* Docket No. [6], and Plaintiff filed a Response in opposition to the Commissioner's Cross-Motion, *see* Docket No. [9].  The parties' cross-motions are now fully briefed, and the case is ripe for the Court's review and resolution.

## II.  LEGAL STANDARD

"In a disability proceeding, the ALJ 'has the power and the duty to investigate fully all matters in issue, and to develop the comprehensive record required for a fair determination of disability.'"  *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989) (quoting *Diabo v. Sec'y of HEW*, 627 F.2d 278, 281 (D.C. Cir. 1980)).  The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Inability to engage in substantial gainful activity not only includes the individual's inability to do his previous work, but requires as well an inability, "considering his age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  *Id.* at § 423(d)(2)(A).  In making this determination, the ALJ is to consider (1) medical data and findings, (2) expert medical opinions, (3) subjective complaints, and (4) the plaintiff's age, education, and work history; however, "[t]he expert opinions of a treating physician are binding on the fact finder unless contradicted by substantial evidence to the

contrary." *Davis v. Heckler*, 566 F. Supp. 1193, 1196 (D.D.C. 1983) (citing cases).

A court will not disturb the determination of the Commissioner if it is based on substantial evidence in the record and the correct application of the relevant legal standards. 42 U.S.C. §§ 405(g), 1383(c); *Butler*, 353 F.3d at 999. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). "The test 'requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence.'" *Butler*, 353 F.3d at 999 (quoting *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365-66 (D.C. Cir. 2003)).

In reviewing an administrative decision, a court may not determine the weight of the evidence nor substitute its judgment for that of the Commissioner if his decision is based on substantial evidence. *Butler*, 353 F.3d at 999; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Instead, the reviewing court must carefully scrutinize the entire record to determine whether the Commissioner, acting through the ALJ, has analyzed all the evidence and has sufficiently explained the weight he has given to obviously probative material. "Because the broad purposes of the Social Security Act require a liberal construction in favor of disability, the court must view the evidence in the light most favorable to the claimant." *Martin v. Apfel*, 118 F. Supp. 2d 9, 13 (D.D.C. 2000) (citing *Davis v. Shalala*, 862 F. Supp. 1, 4 (D.D.C. 1994)).

The reviewing court must also determine whether credible evidence was properly considered. *Id.* (citing *Dionne v. Heckler*, 585 F. Supp. 1055 (D. Me. 1984)). Importantly, an ALJ cannot merely disregard evidence which does not support his conclusion. *Dionne*, 585 F. Supp. at 1060. A reviewing court should not be left guessing as to how the ALJ evaluated probative material, and it is reversible error for an ALJ to fail in his written decision to explain

sufficiently the weight he has given to certain probative items of evidence. *Martin*, 118 F. Supp. 2d at 13 (citing *Davis*, 862 F. Supp. at 2).

## III. DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed, or alternatively that this case should be remanded to the Social Security Administration for a new hearing. He makes three principal arguments in support of these requests. First, he argues that the ALJ erroneously failed to consider Plaintiff's borderline intellectual functioning in determining whether his impairments were severe at step two as well as in the remaining steps in the sequential process. Pl.'s Mot. at 3-5. Second, he argues that the ALJ erroneously assessed Plaintiff's RFC at steps four and five of the sequential analysis because the ALJ (a) was required to, but did not, perform a function-by-function assessment of Plaintiff's ability to work, and include a narrative discussion of how the evidence supported the ALJ's RFC conclusion; (b) ignored pertinent evidence in the record with respect to Plaintiff's mental and physical impairments; and (c) failed to engage in a detailed assessment of Plaintiff's capacity to perform the mental demands of work. *Id.* at 5-14. Third and finally, Plaintiff argues that the hypotheticals presented by the ALJ to the VE ignored key restrictions supported by the medical evidence and did not accurately reflect Plaintiff's condition, such that the VE's responses cannot constitute substantive evidence upon which the ALJ may rely. *Id.* at 14-15. While the Court does not agree with Plaintiff's first assertion that the ALJ improperly ignored evidence regarding Plaintiff's borderline intellectual functioning, the Court does agree that the ALJ failed to properly assess Plaintiff's RFC. Accordingly, the ALJ decision must be reversed and remanded to the Commissioner for further proceedings consistent with this Memorandum Opinion.

A.   *Plaintiff's Residual Functional Capacity*

The Court finds that the ALJ, in assessing Plaintiff's RFC, ignored relevant contradictory evidence indicating that Plaintiff had significant physical limitations, evidence which, if accepted, would have substantially eroded — if not fully precluded — his ability to perform sedentary and/or light work.  In particular, the most recent medical evidence in the record at the time of Plaintiff's hearing (and the only evidence regarding Plaintiff's physical condition that was specifically cited by the ALJ), was the report and Medical Source Statement of Ability to do Work-Related Activities (Physical) (hereinafter, "Statement"), completed by Dr. Azer on August 3, 2005.  As set forth therein, Dr. Azer concluded, *inter alia*, that Plaintiff had marked postural limitations, such that he could occasionally engage in balancing, but could **never** climb ramps, stairs, ladders, ropes or scaffolding or kneel, crouch, crawl, and stoop.  *Id.* at 279.

The ALJ was required to consider this information in assessing the Plaintiff's RFC.  20 C.F.R. § 416.945(b) (requiring an ALJ to consider the nature and extent of any limit on the claimant's ability to "perform certain physical demands of work activity . . . including . . . postural functions, such as reaching, handling, stooping or crouching)").  This the ALJ failed to do.  Although the ALJ's decision generally cites to the information contained in Dr. Azer's written report, the decision neither cites to, mentions, or discusses the specific postural limitations reported by Dr. Azer in the attached Statement that Plaintiff could not climb, stoop, kneel, crouch, or crawl.  While such an error may not always require reversal, where, as here, the record contains uncontradicted evidence that the claimant had substantial limitations in these area that, if accepted, would substantially erode — if not fully preclude — the individual's capacity for performing sedentary and light work, reversal is appropriate.  *See, e.g., Butler*, 353 F.3d at

1001-02 (failure to address record evidence that claimant could never lift, reach or stoop is reversible error).

As is made clear in Social Security Ruling 96-9p, *Determining Capability To Do Other Work – Implications Of A Residual Functional Capacity For Less Than A Full Range Of Work*, 1996 WL 374185 (SSA 1996), significant postural limitations may substantially reduce, if not preclude, a claimant's ability to perform sedentary work:

> An ability to stoop occasionally, i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. ***A complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply***, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.

*Id.* at *8 (emphasis added); *see also Butler*, 353 F.3d at 1000-01 (discussing potentially erosive effect of postural limitations on claimant's ability to perform sedentary work). Similarly, the SSA indicates that light work may require frequent lifting or carrying of objects weighing up to 10 pounds, which "implies that the worker is able to do occasional bending of the stooping type;" as such, "[a]ny limitation on [this] functional abilit[y] must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work." SSR 83-14, *Capability To Do Other Work - The Medical-Vocational Rules As A Framework For Evaluating A Combination Of Exertional And NonExertional Impairments*, 1983 WL 31254, *4 (SSA 1983). Accordingly, if Dr. Azer's conclusion that Plaintiff could never stoop, kneel, crouch, or crawl[5] is accepted, Plaintiff's ability

---

[5] The SSA explains that these activities are similar in that each requires "progressively more strenuous forms of bending parts of the body, with crawling as a form of locomotion involving bending." SSR 85-15, *Capability to Do Other Work-The Medical-Vocational Rules as*

16

to perform sedentary work is significantly reduced, if not completely precluded, and his ability to perform light work may be similarly eroded. Nonetheless, the ALJ did not account for this finding in assessing Plaintiff's RFC. Indeed, the Commissioner does not appear to dispute this point, as he does not argue anywhere in his present Cross-Motion that the ALJ in fact addressed Dr. Azer's conclusions regarding Plaintiff's postural limitations. *See* Def.'s Mot. at 13-14.

The Commissioner argues, however, that the ALJ did not simply ignore these conclusions by Dr. Azer, but rather concluded that Dr. Azer's opinion as to Plaintiff's postural limitations should be discounted or rejected. *See* Def.'s Mot. at 14. As an initial matter, there is no indication in the record supporting this claim. The ALJ does not mention or discuss Plaintiff's ability to stoop, kneel, crouch, or crawl. Regardless, even assuming the Defendant is correct that the ALJ made a finding that such evidence should be discredited, the ALJ's failure to explain his reasons for discounting Dr. Azer's conclusions with respect to Plaintiff's postural limitations would be nonetheless fatal. *See Butler*, 353. F3d at 1002 (finding reversible error where the "ALJ's reasoning is not simply 'spare' . . . in crucial particulars it is missing"). Nor is it otherwise clear from the record why the ALJ discounted this evidence. To the contrary, the ALJ specifically noted that he gave "appropriate weight to the opinion of the Disability Determination Services' medical consultants, because their opinions are supported by medical signs and laboratory findings and are consistent with the record when viewed as a whole." A.R. at 228. Moreover, the only other physical medical evidence in the record is dated 1995 or earlier; as such, there is no contemporaneous, contradictory evidence in the record that supplies a reason for

---

*a Framework for Evaluating Solely Nonexertional Impairments*, 1985 WL 56857, at *7 (SSA 1985).

the ALJ's decision. *See Butler*, 353. F3d at 1002 (finding reversible error where the court could not "discern from the record the ALJ's basis for rejecting [the doctor's] opinions regrading [certain physical] limitations").

For this reason alone, the ALJ's decision below must be reversed and remanded so that the ALJ may re-assess Plaintiff's RFC consistent with this Memorandum Opinion. Nonetheless, in order to provide guidance on remand, the Court briefly notes that the ALJ also failed to address other pertinent, contradictory medical evidence in the record. In particular, Dr. Azer's report and attached Statement indicate that Plaintiff: (a) "should not perform any duties that include lifting, carrying or handling objects with the right upper extremity," A.R. at 276, 278; (b) required a hand-held assistive for ambulation, *id.* 276, 278; (c) could stand or walk for only two hours in an eight-hour workday, *id.* at 278; and (d) had a limited ability to push or pull with his right upper and lower extremities, *id.* at 279. As with Plaintiff's postural limitations, the ALJ was required to consider this information in assessing the Plaintiff's RFC. 20 C.F.R. § 416.945(b) (requiring an ALJ to consider the nature and extent of any limit on the claimant's ability to "perform certain physical demands of work activity such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions)). Again, however, the ALJ failed to address these conclusions in setting forth the Plaintiff's RFC.[6] While the Court need not decide whether the failure to address such evidence would, by itself, require reversal, it nonetheless advises that such evidence should be thoroughly

---

[6] Importantly, although the ALJ recognized that Plaintiff's ability to perform light or sedentary work was proscribed by limited dominant hand usage, as the VE explained at the hearing, this particular limitation (i.e., the limited dominant hand usage) addressed only the claimant's ability to do fine manipulations with this fingers and thumb; the limitation therefore did ***not*** address Plaintiff's reported inability to lift any weight with his right arm.

18

addressed on remand.

### B. The VE's Testimony

Plaintiff also argues that the ALJ improperly relied on the VE's testimony to establish that Plaintiff was capable of performing certain light and sedentary work. Because the Court has already determined that the ALJ improperly assessed the Plaintiff's RFC, the ALJ's finding at step five that Plaintiff is capable of performing other work must also necessarily be reversed as well. Nonetheless, in order to provide guidance on remand, the Court notes that the D.C. Circuit has made clear that "[i]f the ALJ looks to a vocational expert in assessing a claimant's ability to do other work, the ALJ 'must accurately describe the claimant's physical impairments in any question posed to the expert.'" *Butler*, 353 F.3d at 1005-06 (quoting *Simms*, 877 F.2d at 1050)). "Deficiencies in the ALJ's description of the claimant's condition 'undermine the foundation for the expert's ultimate conclusion that there are alternative jobs' that the claimant is capable of performing." *Id.* at 1006 (quoting *Simms*, 877 F.2d at 1053). Accordingly, the Court advises that, to the extent the ALJ finds on remand that any of the physical limitations outlined above are supported by record evidence, the ALJ should include those limitations in any hypothetical questions posed to a vocational expert as may be appropriate.

## IV. CONCLUSION

Based on the foregoing review of the relevant law and the administrative record, the Court shall GRANT Plaintiff's [5] Motion for Judgment of Reversal and shall DENY Defendant's [6] Motion for Judgment of Affirmance. The Commissioner's decision below is reversed as to the ALJ's assessment of the Plaintiff's RFC at steps four and five and as to the ALJ's finding at step five, based on the VE's testimony, that there are a significant number of

jobs in the national economy that Plaintiff is capable of performing. The case is therefore remanded to the Commissioner for further proceedings consistent with this Memorandum Opinion, pursuant to 42 U.S.C. § 405(g). An appropriate Order accompanies this Memorandum Opinion.

Date: June 21, 2010

                                                 */s/*
                                                 **COLLEEN KOLLAR-KOTELLY**
                                                 United States District Judge